Dina R. Richman, SBN 251088
drichman@cozen.com
Mark A. Talise, SBN 305271
mtalise@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

Attorneys for Plaintiff
WESCO INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WESCO INSURANCE COMPANY | Case No.: |
|---|---|
| Plaintiff, | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** |
| vs. | |
| TAULER SMITH LLP, ROMA MIKHA, INC., NMRM, INC., AND SKYLINE MARKET, INC. | Action Filed:<br>Trial Date: None Set |
| Defendants. | |

Plaintiff Wesco Insurance Company ("Wesco"), by and through its counsel, states as follows in support of its Complaint for Declaratory Judgment:

1. Wesco seeks a declaration of rescission of Lawyers Professional Liability Insurance Policy No. WPP1653117-00 (the "Policy") issued by Wesco to Tauler Smith, LLP ("Tauler Smith") on the basis that Tauler Smith made material misrepresentations on insurance applications and a warranty letter submitted to Wesco and on which Wesco relied in issuing the Policy.

2. Wesco seeks a declaration that because the Policy is void *ab initio*, it has no duty to defend or indemnify Tauler Smith in connection with the Second Amended Counterclaim and Third-Party Actions (the "Second Amended Counterclaim") pending against it in a consolidated lawsuit in the United States

District Court for the Southern District of California, Case No. 18-cv-840, styled *In Re: Outlaw Laboratory, LP*.

3. In the alternative, Wesco seeks an order declaring that no coverage is afforded under the Policy for the Second Amended Counterclaim due to certain coverage defenses including but not limited to: Tauler Smith's knowledge of acts or omissions it knew or could reasonably have foreseen might be the basis of a claim prior to the inception of the Policy; the fact that the claim was first made prior to the inception of the Policy; and the applicability of the "business enterprise" exclusions.

## THE PARTIES

4. Wesco is a Delaware corporation with its principal place of business in New York.

5. Tauler Smith, LLP ("Tauler Smith") is a California limited liability partnership with its principal place of business located at 626 Wilshire Boulevard, Los Angeles, California 90017. There are two partners of Tauler Smith: Robert Tauler and Matthew J. Smith. Both partners are citizens of California.

6. Defendant Roma Mikha, Inc. ("Roma") is a California corporation with its principal place of business in California. Wesco seeks no relief from Roma other than to bind it to the outcome of this insurance coverage dispute.

7. Defendant NMRM, Inc. ("NMRM") is a California corporation with its principal place of business in California. Wesco seeks no relief from NMRM other than to bind it to the outcome of this insurance coverage dispute.

8. Defendant Skyline Market, Inc. ("Skyline") is a California corporation with its principal place of business in California. Wesco seeks no relief from Skyline other than to bind it to the outcome of this insurance coverage dispute.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because Wesco is a citizen of

Delaware and New York and Tauler Smith, Roma, NMRM, and Skyline are citizens of California. The amount in controversy exceeds the jurisdictional threshold of $75,000.00, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Tauler Smith is located in this District.

11. This Complaint for Declaratory Judgment is filed pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* An actual, justiciable controversy exists between Wesco and Tauler Smith which involves the rights and liabilities under contracts of insurance, and this controversy may be resolved by a judgment in this action.

## FACTUAL BACKGROUND

### A. The Suits

12. On July 25, 2018, Tauler Smith, a law firm, filed a complaint on behalf of its client, Outlaw Laboratory, LP ("Outlaw"), in the Superior Court of the State of California for the County of San Diego, Case No. 37-2018-00037278-CU-BT-CTL, styled *Outlaw Laboratory, LP vs. San Diego Outlet, Inc., et al.* (the "San Diego Suit"). A copy of the complaint in the San Diego Suit is attached as Exhibit A.

13. On August 12, 2018, the San Diego Suit was removed to the United States District Court for the Southern District of California under Case No. 18-cv-01882-GPC-BGS, and on November 14, 2018, the court granted Roma, NMRM, and Skyline (collectively, "Claimants") motion to consolidate the San Diego Suit with *Outlaw Laboratory, LP v. DG in PB, LLC, et al.*, Case No. 18-cv-840-GPC-GBS (the "DG Suit"), also filed by Tauler Smith. A copy of the complaint in the DG suit is attached as Exhibit B. Hereinafter, the San Diego Suit and the DG Suit are referred to as "the Suits."

14. The Suits are brought under the Lanham Act, 15 U.S.C. 1125, and name as defendants several companies which operate convenience stores and/or liquor stores in the State of California.

15. The Suits allege that Defendants are engaged in a scheme to distribute and sell male enhancement pills containing undisclosed pharmaceuticals to the general public. Ex. A, ¶ 1; Ex. B, ¶ 1.

16. Outlaw asserts that each of the enhancement products has been the subject of laboratory testing and public announcements by the FDA, which found the products to contain certain dangerous drug ingredients which are not disclosed in the packaging and advertising for the products. *Id.*

17. The Suits allege that Defendants profit from the sale of the products by disseminating false statements including that the products are all natural and contain no harmful synthetic chemicals. The Suits allege that Outlaw sent cease and desist letters to each Defendant but Defendants did not comply with the demands. Ex. A, ¶ 3; Ex. B, ¶ 3.

18. Outlaw alleges that it is the manufacturer of competing male enhancement products that are DSHEA-compliant and contends that the proliferation of mislabeled male enhancement pills has been largely unregulated. Ex. A, ¶ 4; Ex. B, ¶ 4.

19. Outlaw alleges that Defendants have knowingly and materially participated in false and misleading marketing, advertising, dissemination, and labeling to promote and sell the enhancement products, giving consumers the false impression that the products are safe and natural supplements. Ex. A, ¶ 6; Ex. B, ¶ 6.

20. Outlaw alleges that it has been injured as a result of Defendants' false and misleading statements, which have negatively impacted Outlaw's sales. Ex. A, ¶ 159; Ex. B, ¶ 54.

21. The Suits seek compensatory damages, restitution of Defendants' ill-gotten gains, treble damages, punitive damages, costs, and fees.

**B.   The Poe Letter**

22. On August 9, 2018, attorney Mark Poe sent a letter to Robert Tauler, Matthew Smith, and Leticia Kimble of Tauler Smith with the subject line "Your shakedown racket" (the "Poe Letter"). A copy of the Poe Letter is attached as Exhibit C.

23. Mr. Poe wrote that one of his clients brought to his attention "a scam that your law firm and its soon-to-be codefendants are perpetrating on small retail stores across California" with specific reference to Outlaw. *Id.*

24. The letter offered a "brief window" during which Tauler Smith could dismiss all of the pending litigation and cease its practice related to the Outlaw claims. *Id.*

25. Mr. Poe's letter referenced another "racket" perpetrated by the Trevor Law Group and he encouraged Tauler Smith to "research how that turned out for the perpetrators." *Id.*

26. The letter asserted that the cease and desist letters sent to small businesses constituted a scheme to defraud and contended that Tauler Smith was liable under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and asserted that Tauler Smith and the individual attorneys were "members of the enterprise." *Id.*

27. Mr. Poe wrote that Outlaw was created purely as a front for the "racket" and noted that RICO claims are not subject to litigation privilege. *Id.*

28. Mr. Poe stated that his firm would cease investigating the claims in exchange for the immediate abandonment of the scheme and dismissal of all related pending litigation, but stated that if Tauler Smith declined to end the "scheme," "we expect that Tauler | Smith will be held jointly and severally liable with fellow

members of its enterprise to restore the 'settlements' that the enterprise has fraudulently received to date, and will be required to pay twice that amount again as damages, as well as the attorneys' fees we incur in rooting out this despicable use of your legal training..." The letter further asserted "we will take all the money that you and other members of the enterprise have earned over the last four years..." *Id.*

29.  Mr. Poe concluded the letter by requesting that Tauler Smith provide notice to its insurer and preserve all documents related in any way to Outlaw. *Id.*

30.  According to the Second Amended Counterclaim, Mr. Tauler responded to the Poe Letter on August 9, 2018. A copy of the Second Amended Counterclaim is attached as Exhibit D, ¶ 7.

C.  **Initial Counterclaim**

31.  On August 24, 2018, Claimants – represented by Mr. Poe's law firm – filed answers to the complaint in the San Diego Suit prior to consolidation. In addition, Roma filed a counterclaim and NMRM and Skyline filed third-party complaints against Outlaw, alleged to be a member of an association-in-fact RICO enterprise (the "Initial Counterclaim"). A copy of the Initial Counterclaim is attached as Exhibit E.

32.  Roma asserted that Outlaw and the other member of its enterprise pursued a scheme to defraud small businesses "reminiscent of the racket that as run by the now disbarred attorneys who operated the Trevor Law Group in the early 2000s..." Ex. E, P. 1.

33.  Roma further asserted that Outlaw used Tauler Smith to send threatening demand letters to small, typically immigrant-run, independent corner stores and liquor stores, threatening the owners for selling over-the-counter male enhancement supplements. *Id.*

34.  Roma contended that demand letters typically threatened that the businesses would be liable for over $100,000 if the matter were to be prosecuted,

then Outlaw generally offered to settle the dispute for varying amounts around $10,000. If an owner did not respond, Outlaw would offer increasingly smaller settlements. *Id.*

35. Roma posited that this type of scheme was not new to California and "[i]t surfaces once a decade or so, as a new crop of enterprising lawyers forgets the lessons of their similarly unscrupulous predecessors." *Id.*, P. 2.

36. In the Initial Counterclaim, Claimants alleged that the scheme is the type that RICO was specifically designed to discourage by creating a private right of action for the victims of racketeers. *Id.* P. 6, ¶ 3.

37. Claimants alleged that because members of the Outlaw enterprise used the mail in conducting the scheme to defraud – constituting thousands of acts of mail fraud – they were liable for disgorgement of their ill-gotten gains, three times the damages they caused, and an injunction ordering dissolution of the enterprise. *Id.*

38. The Initial Counterclaim discussed Mr. Poe's August 9, 2018 letter and Mr. Tauler's response. *Id.*, P. 7, ¶¶ 4-5. Robert Tauler was alleged to be "Outlaw's lead attorney and a not-yet-named member of the Outlaw Enterprise." *Id.*, ¶ 4.

39. Claimants alleged that the threat of RICO liability was false and misleading in that Outlaw had never sued a store under the RICO Act "because any lawyer of ordinary skill knows that there is not even a colorable claim for RICO liability against these stores." *Id.*, P. 11, ¶ 19.

40. Claimants alleged that the signatory on the demand letters was typically Tauler Smith attorney Leticia Kimble, an "as-yet-unnamed member of the Outlaw Enterprise who works as 'counsel' to the as-yet-unnamed member Tauler Smith LLP, on whose letterhead the fraudulent letters are written." *Id.*, ¶ 20.

41. Claimants alleged that each of them received by U.S. Mail a fraudulent demand letter signed by Ms. Kimble. *Id.*, P. 12, ¶¶ 22-24.

42. Tauler Smith was expressly alleged to be a member of the RICO enterprise in the Initial Counterclaim, that Robert Tauler and Matthew Smith were independent members of the enterprise, and "Tauler Smith's and Mr. Tauler's role in conducting the affairs of the Outlaw Enterprise exceeds that of mere attorney agents of the 'client' Outlaw Laboratory." *Id.*, P. 14, ¶ 30.

43. Claimants alleged that the affairs of the enterprise were independently conducted by Tauler Smith and its principals. *Id.*

44. Ms. Kimble was also alleged to be a member of the enterprise as the signatory on the fraudulent letters and the person who directed the victims of the scheme to contact Tauler Smith to "coordinate the necessary amount of protection money." *Id.*, ¶ 31.

### D. Tauler Smith's Insurance Applications And Warranty

45. On or about November 6, 2018, Tauler Smith, through its insurance broker, forwarded an insurance application to underwriting manager Synergy Professional Associates, Inc. ("Synergy").

46. The initial application was digitally signed by Robert Tauler and dated November 6, 2018.

47. In the initial application, Tauler Smith stated that there had been "no incidents or claims" in the previous five years.

48. On or about November 20, 2018, Tauler Smith submitted to Wesco an Application for Lawyers Liability Insurance signed by Robert Tauler.

49. In the Wesco application, Tauler Smith answered "No" to the question of whether any member of the firm was aware of any incident, facts, circumstances, acts or omissions that might result in a professional liability claim against the firm or predecessor firm or against any current or former attorney of the firm while affiliated with the firm of predecessor firm.

50. Tauler Smith further answered that no professional liability claim had been made against the firm or any of its members in the prior five years.

51. The following disclaimer was contained in the Wesco application:

> THIS IS AN APPLICATION FOR A CLAIMS MADE AND REPORTED INSURANCE POLICY. IT IS IMPORTANT THAT YOU REPORT ANY KNOWN FACTS OR CIRCUMSTANCES THAT COULD REASONABLY BE EXPECTED TO RESULT IN A CLAIM TO YOUR CURRENT INSURER AND IF NECESSARY TO PRESERVE COVERAGE FOR SUCH CLAIM THAT YOU PURCHASE AN EXTENDED REPORTING PREIOD ENDORSEMENT.

52. The following was contained in the Wesco application above the area where Mr. Tauler signed:

> **APPLICANT'S AUTHORIZATION AND CERTIFICATION**
>
> The undersigned is an authorized representative of the prospective Named Insured, and acknowledges that the information provided with the application, including all supplements, attachments and replies to underwriter inquiries, and applications from other insurance companies which have been submitted to the Company and made a part of this application:
>
> 1. Will be relied upon by the Company in determining the acceptability of the Applicant and the premium amount to be charged;
> 2. Are true, accurate and complete; and
> 3. Will be incorporated into the policy, if issued.
>
> \*     \*     \*
>
> **THE UNDERSIGNED ON BEHALF OF THE APPLICANT FIRM AND ALL MEMBERS OF THE FIRM CERTIFIES THAT THE ABOVE APPLICATION HAS BEEN READ AND THAT ALL STATEMENTS MADE IN THIS APPLICATION ARE TRUE, MATERIAL AND COMPLETE. THE UNDERSIGNED UNDERSTANDS THAT: (1) IF THE POLICY IS ISSUED, THIS IS DONE BY THE COMPANY IN RELIANCE UPON THESE REPRESENTATIONS; AND (2) ANY COVERAGE OBTAINED BY FRAUD, MATERIAL MISREPRESENTATION OR OMISSION IS VOID.**

53. On or about November 26, 2018, Tauler Smith submitted a Professional Liability Warranty letter signed by Mr. Tauler.

54. In the letter, Tauler Smith answered "No" to the queries: "[a]fter inquiry among all members of the applicant firm, are any members of the Applicant Firm aware of any professional liability claims or other allegations of errors or omissions made against them or against any members of a Prior Firm or a Predecessor Firm which has not already been disclosed to Wesco Insurance Company in writing?" and "[a]fter inquiry, are any members of the Applicant Firm aware of any actual or alleged error, omission, incident or circumstances, which might reasonably result in a claim or an accusation of error or omission?"

### E. Second Amended Counterclaim

55. On July 1, 2019, Claimants filed a motion for leave to file the Second Amended Counterclaim, seeking to add as counter-defendants/third-party defendants certain other members of the RICO enterprise, including Tauler Smith. A copy of the motion for leave is attached as Exhibit F.

56. In the motion, Claimants asserted that it appeared that Tauler Smith first engaged an investigator to develop "proof" for the scheme in August 2017, two months prior to the launch of Outlaw's supposed competing product. Ex. F, pp. 1-2.

57. Claimants alleged that Tauler Smith appeared to have been instrumental in concocting the scheme. *Id.*, P. 2.

58. On August 19, 2019, the court granted motion for leave. In its opinion, the Court noted that the Initial Counterclaim (filed on August 24, 2018) "described a RICO enterprise between Outlaw, its attorneys, Tauler Smith LLP …" A copy of the court order is attached as Exhibit G, P. 3.

59. In addition the court held that none of the proposed additional defendants could argue unfair surprise, as claimants "have long alleged in their pleadings – as early as Counterclaimants' August 24, 2018 answer and original countercomplaint – that the lawyers of Tauler Smith LLP, and Outlaw's principals, jointly participated in the RICO scheme." *Id.*, pp. 13-14.

60. On August 20, 2019, Claimants filed the Second Amended Counterclaim naming Tauler Smith as counter-defendant/third-party defendant. *See* Ex. C.

61. The Second Amended Counterclaim alleges that Tauler Smith coordinated with the directors for Outlaw to orchestrate the formation of the scheme and was the payee for the settlement proceeds. *Id.*, ¶ 71(a), (e).

62. Claimants allege that Tauler Smith failed to restrict itself to the ordinary role of counsel by serving demand letters in states in which none of its attorneys is a member of the state bar. *Id.*, ¶ 71(g).

63. Like prior iterations, the Second Amended Counterclaim contains two RICO counts and one rescission count and seeks compensatory and treble damages, rescission, injunctive relief, restitution, costs and fees, and seeks all such relief against Tauler Smith.

64. On or about August 19, 2019, Tauler Smith provided notice to Wesco of the Second Amended Counterclaim and requested coverage under the Policy.

65. The August 19, 2019 notice constituted the first notice to Wesco of the Suits, the Initial Counterclaim, the Second Amended Counterclaim, or any other related matter.

## WESCO POLICY

66. On November 27, 2018, Wesco issued the Policy to Tauler Smith for policy period November 11, 2018 to November 11, 2019. A copy of the Policy is attached as Exhibit H.

67. The Policy contains the following Insuring Agreement, in relevant part:

> A. Coverage
>
> The **Company** will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

***

2. prior to the inception date of this policy, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the **Company**, no **Insured** knew or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be expected to be the basis of a **claim**.

69. The Policy contains the following definitions:

   B. **"Claim"** means a written or verbal demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in rendering or failing to render **legal services**. A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured**.

***

   H. **"Damages"** means judgments, awards and settlements if negotiated with the assistance and approval of the **Company**. **Damages** do not include:

   1. Legal fees, costs and expenses paid to or incurred or charged by the **Insured** whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

***

   4. punitive or exemplary amounts and the multiplied portion of multiplied awards;

   5. any form of non-monetary relief...

***

   O. **"Legal services"** mean:

   1. those services performed by an **Insured** for others as a lawyer, arbiter, mediator, expert witness, title agent, a notary public, governmental affairs advisor or lobbyist, or member of a bar association, ethics, peer review or similar professional board or committee but only if such services are performed for a fee that inures to the benefit of the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono) services are performed and approved by the **Named Insured**. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this policy...

***

   AA. **"Related act or omission"** means all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event advice or decision.

BB. **"Related claim"** means all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**.

70. The Policy contains the following "business enterprise" exclusions:

   This policy does not apply:

   D. to any **claim** based on or arising out of an **Insured's** capacity as:

   1. a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise or charitable organization unless such enterprise or organization is named in the Declarations…

   \*\*\*

   F. to any **claim** based on or arising out of **legal services** performed for any existing or prospective partnership, organization, corporation, company or other business enterprise, including any **claim** made by or on behalf of such partnership, organization, corporation, company or other business enterprise, if at the time of the act or omission giving rise to such **claim**:

   1. any **Insured** controlled, operated or managed or intended to control, operate or manage such enterprise; or

   2. any **Insured**:

      a. was a partner or employee of such enterprise; or

      b. directly or indirectly owned more than 10% of such enterprise; or

   3. **Insureds** cumulatively owned more than 35% of such enterprise.

   As used in this exclusion, the word "partner" shall be deemed to include members of limited liability companies or limited liability partnerships.

71. The Policy contains the following provision regarding multiple claims:

   D. Multiple **Insureds**, **Claims** and Claimants

   The Limits of Liability shown in the Declarations are subject to the provisions of this policy and are the amount the **Company** will pay regardless of the number of **Insureds**, **claims** or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company** during the **policy period** or any subsequent renewal or Extended Reporting Period, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** during the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**. The Limits of Liability for any such **related claims** shall be part of, and not in addition to, any remaining Limits of Liability as stated in the Declarations of the policy.

72. The Policy contains the following condition:

COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

M. Entire Contract

By acceptance of this policy the **Insured** agrees that:

1. the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;

2. this policy is issued in reliance upon the **Insured's** representations;

3. this policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4. the misrepresentation of any material matter by the **Insured** or the **Insured's** authorized agent/broker, which if known by the **Company** would have led to the refusal by the **Company** to make this contract or provide coverage for a **Claim** hereunder, will render this policy null and void and relieve the **Company** from all liability herein.

## COUNT I – RESCISSION

73. Wesco realleges and incorporates paragraphs 1 through 72 as if fully set forth herein.

74. In its insurance applications and warranty letter submitted to Wesco, Tauler Smith made misrepresentations of material fact as described above.

75. Wesco had a right to rely on Tauler Smith's representations and did reasonably rely on those representations when it issued the Policy to Tauler Smith.

76. Had Tauler Smith provided truthful answers in the insurance applications and warranty letter, it would have been required, as stated in the application, to complete a claim supplement form requiring detailed information regarding prior claims, and incidents which may result in claims, including whether such claims or incidents had been reported to any prior insurer.

77. If Tauler Smith had provided truthful answers to the application and warranty letter questions and completed the then required claim supplement, Wesco would not have issued the Policy to Tauler Smith or at least would have excluded all

claims related to the allegations contained in the Poe Letter and the Initial Counterclaim.

78. As a result of Wesco's reliance on the representations made by Tauler Smith, the issuance of the Policy was based upon material misrepresentations.

79. The material misrepresentations and/or concealments made in the applications for insurance render the Policy void *ab initio*.

80. Wesco has provided Tauler Smith with written notice that the Policy was rendered null and void, and that Wesco would seek a judicial declaration that the Policy is rescinded and return all premiums paid upon that judicial determination.

81. Further, service of this Complaint shall provide Tauler Smith with notice of Wesco's rescission.

82. Wesco is entitled to a declaration from this Court that the Policy is rescinded and void *ab initio* pursuant to Cal. Civ. Code § 1689(b)(7), Cal Ins. Code §§ 331 and 359, and 28 U.S.C. § 2201, *et seq*.

83. Upon such declaration, Wesco will remit the premiums paid for the Policy by Tauler Smith.

## COUNT II – DECLARATORY RELIEF

84. Wesco realleges and incorporates paragraphs 1 through 72 as if fully set forth herein.

85. Tauler Smith contends that it is entitled to insurance coverage under the Policy and that Wesco is obligated to defend and indemnify it for the claims alleged by Claimants in the Second Amended Counterclaim.

86. In the alternative to rescission, Wesco contends that the Policy does not cover the claims against Tauler Smith for the following reasons:

    a. The Insuring Agreement states that Wesco will pay damages and claim expenses that the insured shall become legally obligated to pay arising out of an act or omission in the performance of legal services as long as

prior to the inception date of the Policy, no insured knew or could reasonably have foreseen that any such act or omission might be expected to be the basis of a claim.

b. To the extent all requirements of the Insuring Agreement in the Policy are not satisfied, no coverage exists.

c. The Counterclaim does not arise out of the performance of legal services and therefore the requirements of the Insuring Agreement are not satisfied.

d. The Poe Letter received by Tauler Smith on August 9, 2018 constitutes a claim first made prior the inception of the Policy and all related claims are deemed a single claim first made prior to the inception of the Policy and therefore the requirements of the Insuring Agreement are not satisfied.

e. Tauler Smith knew or could reasonably have foreseen that the acts and/or omissions asserted in the Poe Letter and alleged in the Initial Counterclaim might be the basis of a claim and therefore the requirements of the Insuring Agreement are not satisfied.

f. Excluded from the Policy definition of "damages" are legal fees, costs and expenses paid to or incurred or charged by the insured whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing.

g. There is thus no coverage under the Policy for any relief sought which does not constitute "damages."

h. The Policy precludes coverage for any claim based on or arising out of an insured's capacity as a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise or

        charitable organization unless such enterprise or organization is named in the Declarations.

    i. There is no coverage under the Policy to the extent the Second Amended Counterclaim arises out of Tauler Smith and/or its employees and/or agents' capacity as a former, existing or prospective officer, director, shareholder, partner or manager of Outlaw and/or the alleged RICO enterprise.

    j. The Policy further precludes coverage for any claim based on or arising out of legal services performed for any existing or prospective partnership, organization, corporation, company or other business enterprise, if at the time of the act or omissions giving rise to such claim, any insured controlled, operated or managed or intended to control, operate or manage such enterprise.

    k. There is no coverage under the Policy to the extent the Second Amended Counterclaim is based on or arises out of legal services Tauler Smith and/or its employees and/or agents controlled, operated, and/or managed Outlaw and/or the alleged RICO enterprise and performed legal services therefor.

87. Wesco seeks a declaration that no coverage is afforded for the Second Amended Counterclaim, and that Wesco owes no duty to defend or indemnify Tauler Smith relative to the Second Amended Counterclaim, or any claims arising out of the scheme alleged in the Second Amended Counterclaim.

88. A judicial declaration is necessary and appropriate at this time, under the circumstances alleged above, so that Wesco can ascertain its duties under the Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Wesco Insurance Company requests that this Court enter judgment in its favor and against Defendants Tauler Smith, LLP, Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc.:

A. Declaring that Lawyers Professional Liability Insurance Policy No. WPP1653117-00 is rescinded and void *ab initio*;

B. In the alternative, declaring that Wesco has no duty to defend or indemnify Tauler Smith, LLP;

C. For costs of suit incurred; and

D. For such other relief as the Court may deem just and proper.

Dated: September 20, 2019         COZEN O'CONNOR


By: /s/ Mark A. Talise
    Dina R. Richman
    Mark A. Talise
    Attorneys for Plaintiff
    WESCO INSURANCE COMPANY