**LOPEZ, BARK & SCHULZ LLP**
Harry J. Schulz, III (SBN 205625)
  *hschulz@lbslawyers.com*
Michael E. Lopez (SBN 214937)
  *mlopez@lbslawyers.com*
Brian Z. Bark (SBN 217514)
  *bbark@lbslawyers.com*
James P. Miller (SBN 307189)
  *jmiller@lbslawyers.com*

300 Spectrum Center Drive, Suite 1550
Irvine, CA 92618
Telephone: (949) 383-9585
Facsimile:  (714) 242-1544

Attorneys for Defendant, TAULER SMITH, LLP

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WESCO INSURANCE COMPANY, <br><br> Plaintiff. <br><br> v. <br><br> TAULER SMITH, LLP, ROMA MIKHA, INC., NMRM, INC., AND SKYLINE MARKET, INC., <br><br> Defendants. | Case No. 2:19-cv-08171 PA (SKx) <br><br> Honorable Percy Anderson <br> Courtroom No. 9A <br><br> **DEFENDANT TAULER SMITH'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST COUNT OF PLAINTIFF'S COMPLAINT** <br><br> **[F.R.C.P. 12(b)(6)]** <br><br> **Date:       January 6, 2020** <br> **Time:       1:30 pm** <br> **Courtroom: 9A** <br><br> Complaint Filed:  September 20, 2019 <br> Trial Date:          None Pending |

Defendant Tauler Smith only has a few short points to make in reply to Wesco's Opposition and will dispense with an introduction.

**1. Wesco's Central Argument Is Nothing More Than Bootstrapping**

In "The Boy Who Cried Wolf," the wolf is *really* there the third time, but the men of the village do not come. Wesco's Opposition to Defendant's Motion to Dismiss ("Opp.") essentially argues that because the boy had *previously* cried wolf, the men should were aware of facts and circumstances that might "reasonably result" in a wolf attack, and indeed, the body of the dead boy is *evidence* they should have known better. This argument is explicitly made on page ten:

> However, the fact that Tauler Smith was named as a counter-defendant in the Second Amended Counterclaim in the manner explicitly identified in the Initial Counterclaim – as a member of the RICO enterprise – is dispositive of the existence of incidents, facts, circumstances, acts, or omissions identified in the Initial Counterclaim that might result in a professional liability claim.

Opp. at 10:20-25.

This is pure bootstrapping: Wesco argues that because there *really* was a lawsuit based on those allegations the third time – after a letter and one set of counterclaims had been shown to be empty bluster – a reasonable attorney would have known that a "claim" might "reasonably result." But as set forth at length in the Motion, the objective facts[1] ***at the time the application*** were such that the aggressive posturing of the Poe Letter had been shown to be a paper tiger because, for all of the vivid and suggestive allegations of the Initial Counterclaims, Tauler Smith ***was not named*** as a Cross-Defendant. Put simply, events taking place *after* the representations in the insurance application cannot in any way determine or affect what was reasonable to expect at the time the representations were made.

---

[1] Wesco accuses Defendant – without citation– of arguing for a "subjective standard". Opp. at p.8, n.6. Defendant respectfully suggests Wesco misreads the Motion.

REPLY BRIEF ISO OF MOTION TO DISMISS

## 2. Wesco Never Alleged the Poe Letter's Being A "Claim" as a Ground For Rescission.

One of Wesco's primary arguments is that Tauler Smith "fails to address altogether that the Poe Letter is alleged to be a claim that Tauler Smith failed to disclose." Opp. at 7:1-5. Wesco does not offer any citation to this supposed allegation, only the bare allegation *in the Opposition* that "The Poe Letter was a claim." *See, e.g.,* Opp. at 7:20. The reason for this reticence is that the allegation only appears in Wesco's alternative Count II. *See* Complaint (Dkt. 1) at ¶ 86(d), at 16:9-13. It is simply not an allegation that is part of Count I.. In any event, Wesco's argument that the Poe Letter was a "claim" both relies on the wrong legal standard and is simply wrong.

Wesco cites to case law stating that a formal lawsuit is not strictly necessary for there to be a "claim" under various types of liability policies. *See* Opp. at p.7, n.5. But none of that authority is relevant here: the question is whether the Poe Letter meets the definition of "claim" *in Wesco's insurance policy*. That Policy – which Wesco does not bother to cite – defines a claim as "a written or verbal demand received by the Insured for money or services arising out of an act or omission… in rendering or failing to render legal services." *See* Exh. H to Complaint (Dkt. 1-8) at p. 9 of 29, Section II.B.

Simply put, a demand to withdraw a lawsuit or face a possible suit in return *is not* a demand for money or services. The Poe Letter did not demand money, and it did not demand Tauler Smith represent Poe's clients. It was a contingent threat: "do this or else." That is facially and clearly not a "claim" under the Policy, and Wesco cannot revive its first Count by amending its Complaint to include this allegation. *See, e.g., Abifadel v. Cigna Ins. Co.* 8 Cal.App.4th 145, 160 (1992) ("a claim is not threatened action, accusation of misconduct, or mere notice of an intention to hold an insured responsible for a wrongful act"); *Winkler v. Nat. Union Fire Ins. Co.*, 930 F.2d 1364, 1366-67 (threat to take legal action to recoup losses might be notice of "intention" to hold insureds liable, but was not a claim; insured only entitled to coverage if it gave notice of facts and circumstances during the policy period).

### 3. Wesco Misrepresents Defendant's Argument: the Actual Beliefs of the Underlying Counterclaimants are Irrelevant to this Analysis.

In addition to a number of other mild mischaracterizations of Defendant's Motion, Wesco argues that Tauler smith is impermissibly "relying upon speculation" as to the Counterclaimant's subjective beliefs. This is a fairly egregious misreading of the Motion. Tauler Smith's argument is that Counterclaimants *demonstrably* did not believe Tauler Smith should have been named as a party because they drafted the Counterclaims and chose not to name Tauler Smith. The argument is from evidence; there is no "speculation" involved. And in any case, the underlying Counterclaimant's actual subjective beliefs are irrelevant to this analysis.[2] What matters is whether the evidence of those beliefs available to Tauler Smith would have led it to think that a claim "reasonably might" result.

### 4. Wesco Doesn't Understand That the Detailed Allegations of the Initial Counterclaim Make Its Position *Worse*.

Wesco's Opposition is filled with reference after reference after reference to the detailed, specific, and (let us be frank) damningly accusatory allegations of the Initial Counterclaim: "Tauler Smith did this," and "Tauler Smith did that," and "Tauler Smith perpetrated a scheme and a racket," and "Tauler Smith was a member of a RICO enterprise," etc. etc. etc. *See, e.g.,* Opp. at 3:15-26, 9:27-10:14 [describing a "panoply of allegations"], 12:6-12. Yet Wesco seems blithely unaware of the fact that the more detailed and the more extensive the allegations of the Initial Counterclaim were, the more the underlying Counterclaimant's failure to name Tauler Smith as an actual defendant makes the entire course of interaction with the Counterclaimants leading up to the insurance application – including the Poe Letter itself – seem like a blustery charade. The Poe Letter said "drop your case or else." Tauler Smith did not drop its

---

[2] This needs to be contrasted, however, with the *objective* evidence of those beliefs that was available to Tauler Smith at the time it made the representations in its insurance application.

case. Where was the "or else"? Wesco cannot escape a singular truth: the very person who Wesco argues "reasonably might" have brought a liability claim based on the allegations of the Initial Counterclaim *did not bring that claim* when they actually made those allegations in Court, despite an explicit promise to do so made in the Poe Letter. Any reasonable person would think that Poe was "crying wolf".

## 5. **Wesco is Entitled to All Reasonable Inference of *Fact*, not to Having Conclusions of Law Decided in Its Favor.**

Wesco argues that it is entitled to "all reasonable inferences" from the facts it has alleged. *See, e.g.,* Opp. at 5:11-14. But that bias does not extend to "conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact[.]" *Barapind v. Reno*, 72 F.Supp.2d 1132, 1141 (E.D.Cal. 1999). Defendant does not dispute that the Poe Letter says what it says, nor that the Initial Counterclaim says what it says. For purposes of this motion, *the alleged facts are not in dispute*.

But Wesco is not entitled to have either conclusory assertions or conclusions of law drawn in its favor. It is not, for example, entitled to have this Court simply accept as true that Tauler Smith's answers on its insurance application were *false* – not when the very facts alleged in the Complaint itself show those answers to have been true. It is not entitled to have this Court simply accept the conclusory statement that "the contents of the Poe Letter and Initial Counterclaim clearly provide[ ] a [reasonable][3] basis to conclude that facts, circumstances, acts, or omissions which might result in a professional liability claim are identified." *See* Opp. at 8:6-11.

---

[3] In its arguments to the Court, Wesco repeatedly omits the explicit standard of "reasonableness" that applies. *See* Opp. at 1:21-22 ("facts, circumstances, acts or omissions that **might result** in a professional liability claim"); *id.* at 2:2-3 ("circumstances which **might result** in a claim"); *id.* at 4:9-13 (misrepresenting application as asking whether Tauler Smith was "aware of any incident, facts, circumstances, acts or omissions that **might result** in a professional liability claim"); *id.* at 6:18-21 (claiming that Defendants motion "fails to apply the proper standard to… determining whether known facts or circumstances **might result** in a claim"] [all emphases added). The irony of the last example is particularly poignant.

Tauler Smith asks this Court to make a ruling as a matter of law that ***any*** reasonable attorney in Tauler Smith's position would be unconcerned about being named in the very Counterclaims *which had already been brought* without naming the firm. This does not seem like a particularly difficult call: one would in fact have to be an ***unreasonably*** anxious and apprehensive attorney to think that there were any teeth to the Poe Letter's threats to sue Tauler Smith at that point in time.

Tauler Smith asks this Court to bear in mind that the insurance application did not ask whether anyone had ever *threatened* to sue the firm; it did not ask whether anyone had made allegations that, if true, would provide the basis for relief. What the insurance company asked was whether Tauler Smith was aware of circumstances that might "reasonably result" in a claim. *See* Opp. at 7:7-11.

Tauler Smith was certainly aware of facts and circumstances, but they were not such as might "reasonably result" in a claim. As a matter of law, on the facts alleged in the Complaint, there are no grounds for rescission.

Dated: December 23, 2019                LOPEZ, BARK & SCHULZ LLP

By: _____
Michael E. Lopez
Attorneys for Defendant
Tauler Smith, LLP